COSBY-WIRTH SALES BOOK CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26175.   Promulgated May 23, 1930.

*William H. Donahue, Esq.*, and *Charles F. Miller, C. P. A.*, for the petitioner.

*Harold Allen, Esq.*, for the respondent.

OPINION.

TRUSSELL : The record shows two separate and distinct transactions in respect to the assets and business of petitioner. The first is in performance of an agreement by Philip W. Wirth and other stockholders of petitioner to secure the sale and transfer to the American Sales Book Co., Ltd., a Canadian corporation, of all the assets and business of petitioner with the exception of certain specified liquid assets, the consideration provided to be paid these stockholders being an amount in cash and certain preferred nonvoting stock in a new corporation organized to take over the business, or, in the event the purchasers wished to use the existing corporation for the carrying on of future business, then the stock consideration was to be paid in nonvoting preferred stock of petitioner upon amendment of its charter to authorize the issuance of new preferred and common stock in place of and in larger amounts than the then outstanding preferred and common stock.

In performing this agreement the Canadian corporation elected to take over petitioner instead of organizing a new corporation to take over the assets and the agreement was carried out by amendment of petitioner's charter to authorize $200,000 par value preferred and $300,000 par value common stock in place of the $100,000 common

and $50,000 preferred stock heretofore authorized and outstanding in the hands of Wirth and his associates, and petitioner distributed to these stockholders the excepted liquid assets, constituting accumulated surplus of petitioner, represented by cash, accounts receivable and notes receivable in the amount of $50,702.20, against which aggregate current liabilities of $6,674.13 were assumed and paid by these stockholders. The $100,000 of common and $50,000 preferred stock outstanding in the hands of Wirth and his associates was surrendered and canceled and in its place the $200,000 of authorized preferred stock was issued to them. Three shares of the newly authorized common stock were issued to nominees of the Canadian corporation, thus placing in it full voting control of petitioner and a new directorate of the Canadian corporation's selection was elected. The cash agreed by the contract to be paid Wirth and his associates was deposited by the Canadian corporation to the credit of petitioner whose check for that amount was delivered to Wirth and distributed among the stockholders.

We are not concerned with the question of gain realized by the individual stockholders and it is quite evident that by this transaction no gain accrued to petitioner. It parted with no assets except by distribution of a portion of its surplus to stockholders. At the conclusion of the transaction it held the same assets as before, with exception of those distributed to its stockholders, and the only other change as to it, was that it had then outstanding $200,000 of preferred and $300,000 of common stock in place of the former $100,000 of common and $50,000 preferred stock and these are merely capital changes.

By the contract in question the contemplated transaction is referred to as a sale of the assets of petitioner, but an examination of the conditions of the agreement shows it to be one providing for either a sale of certain corporate assets or a sale of the control of the corporate petitioner, whichever the purchaser might prefer, and we are concerned only with the agreement as carried out, which was, under the election of the purchaser, merely the acquisition by it of the control of petitioner. The cash paid by the Canadian corporation to the stockholders through petitioner was not received by it for corporate assets conveyed, but was paid it for the stockholders and represented the price paid by the Canadian corporation for the control of petitioner through the exchange of these stockholders of voting for nonvoting stock and this was something belonging to the stockholders as an incident of their then stock ownership and not an asset of petitioner.

After this transaction was completed, the Canadian corporation, as owner of the issued voting stock, was in full control, and after operating the petitioner for a month and a half, determined to .

organize a new corporation to take over the business. This new corporation was organized, having the same stock issue as petitioner, and all assets then owned by petitioner were conveyed to it, all of petitioner's stock being turned in and canceled, stock of the new corporation of the same class and in similar amounts being issued in its place to the several stockholders.

It is clear to us that this second transaction constituted a reorganization under the definition of section 203 (h) (1) of the Revenue Act of 1926 as:

* * * (A) A merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

The section cited further provides:

(b) (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

(3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

In view of these provisions we are of the opinion that, in effecting such reorganization, the transfer of petitioner's assets to the new corporation did not, as to petitioner, give rise to taxable gain.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*